IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CORNELL RESEARCH FOUNDATION, INC.,
and CORNELL UNIVERSITY,

                    Plaintiffs,

                                              Civ. Action No.
         vs.                                  5:01-CV-1974 (NAM/DEP)

HEWLETT-PACKARD COMPANY,

                    Defendant.

_____

APPEARANCES:                         OF COUNSEL:

FOR PLAINTIFFS:

SIDLEY, AUSTIN LAW FIRM               EDWARD POPLAWSKI, ESQ.
555 W. Fifth Street                   DENISE McKENZIE, ESQ.
Suite 4000                            SANDRA FUJIYAMA, ESQ.
Los Angeles, CA 90013                 BRYAN K. ANDERSON, ESQ.

CORNELL UNIVERSITY                    JAMES J. MINGLE, ESQ.
Office of Counsel                     NELSON ROTH, ESQ.
300 CCC Building, Garden Avenue       VALERIE CROSS, ESQ.
Ithaca, NY 14853

FOR DEFENDANT:

DLA PIPER, RUDNICK LAW FIRM           JOHN ALLCOCK, ESQ.
401 B Street                          SEAN C. CUNNINGHAM, ESQ.
Suite 1700                            STEWART M. BROWN, ESQ.
San Diego, CA 92101                   ARTHUR A. WELLMAN, ESQ.
                                      ERIN P. GIBSON, ESQ.

HARTER, SECREST LAW FIRM              JERAULD E. BRYDGES, ESQ.
1600 Bausch and Lomb Plaza
Rochester, NY 14604-2711

FISH, RICHARDSON LAW FIRM
111 Congress Avenue
Suite 810
Austin, TX 78701

BARRY K. SHELTON, ESQ.
JOHN E. GUIST, ESQ.

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Defendant and counterclaim plaintiff Hewlett-Packard Company

("HP") has moved for bifurcation of the trial to be conducted in this patent

infringement action and an expedited bench trial on the issue of

unenforceability, based upon alleged inequitable conduct on the part of

the inventor and his agents when presenting his application for the patent

in suit before the United States Patent and Trademark Office ("PTO").

Urging the strength of its inequitable conduct defense and the efficiency

and potential savings of costs and judicial resources which could be

realized through bifurcation, HP implores the court to conduct an

immediate trial on the issue in the hope that it will yield a favorable result

and obviate the need for further proceedings in the case, at least at the

trial court level.  The motion is vigorously opposed by plaintiffs and

counterclaim defendants Cornell University ("CU") and Cornell Research

Foundation, Inc. ("CRF") (collectively, "Cornell"), who argue that adoption

of the procedure now advocated by HP would result in additional, undue

2

delay in reaching the merits of the case and substantial overlap in the evidence to be adduced at the two trials contemplated by HP's motion.

HP's motion for bifurcation has been referred to me by the assigned trial judge, Chief District Judge Norman A. Mordue, for the issuance of a report and recommendation.  Having thoroughly reviewed the parties' submissions and considered the arguments presented during a hearing conducted on August 9, 2006, I recommend that the motion be denied substantially for the reasons articulated in Cornell's opposition papers.

I.    BACKGROUND

This is a patent infringement suit brought by plaintiffs CU and its technology arm, the CRF, against HP, a preeminent manufacturer of electronic equipment and apparatus, including computer processors.  At the heart of this action is United States Patent No. 4,807, 115 (the "'115 patent"), issued in 1989 and held by the CRF, as assignee of the patent inventor, Dr. Hwa C. Torng.  The invention at issue in that patent relates to an instruction issuing system and method for processors with multiple functional units.  In simplistic terms, Cornell contends that the methodology described in the '115 patent allows for the non-sequential processing of instructions, thereby greatly enhancing the speed at which the device in which the processor is located operates.

The issues raised by the parties' pleadings in this case include the appropriate construction to be afforded to the claims contained within the '115 patent;[1] its validity and enforceability; whether the patent was infringed by HP; and, if so, what damages should be awarded.  Common to HP's inequitable conduct and patent invalidity defenses are certain materials which, it contends, should have been disclosed to the PTO patent examiner and anticipate or render obvious the claims set forth in the '115 patent.  According to papers in support of the instant motion and HP's presentation during oral argument, its inequitable conduct defense will focus upon four such pieces of what it contends constitute relevant prior art, including 1) a paper co-authored by Dr. Garold Tjaden and Dr. Michael Flynn in 1970, entitled "Detection and Parallel Execution of Independent Instructions" (the "Tjaden-Flynn article"); 2) a 1969 thesis authored by Dr. Tjaden; 3) a 1972 doctoral dissertation prepared by Dr. Tjaden; and 4) a dissertation written by Robert Wedig in 1982.  The centerpiece of the inequitable conduct and invalidity defenses, however, is clearly the 1970 Tjaden-Flynn article.  HP argues that the Tjaden-Flynn piece anticipates the claims of the '115 patent by disclosing that as early

---

[1]      The court conducted a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384 (1996), and issued a decision construing the disputed '115 claims on March 26, 2004. Dkt. No. 225.

as in 1970 it was possible to develop a device which could process multiple common non-sequential instructions.  In support of its inequitable conduct argument, HP asserts that Dr. Torng was aware of the article during the pendency of his patent application, and that while it was referenced in another submission before the patent examiner, the article itself should have been disclosed.

That Dr. Torng was aware of at least three of these pieces of prior art, including the Tjaden-Flynn article, is demonstrated by his references to and discussion of those articles in a paper written by him in September of 1986.  While not possessing any direct evidence of an intent by Dr. Torng and his agents to deceive the patent examiner, HP asserts that the level of the article's materiality, coupled with the implausibility of the explanation given by Dr. Torng for not disclosing it – that is, that it was not practicable based upon that article to design a processor with those characteristics in 1970 – give rise to a strong inference of intent to deceive.

II.    DISCUSSION

A.    Inequitable Conduct Generally

Before turning to the specifics of defendant's motion to bifurcate it is important, for contextual purposes, to understand the legal principles

5

associated with the defense of unenforceability based upon inequitable

conduct, a defense which is by no means foreign to patent infringement

litigation.[2]

   Unlike many of the other defenses raised by HP to Cornell's claims

of infringement, the defense of inequitable conduct is "entirely equitable in

nature, and thus not an issue for a jury to decide." *PerSeptive*

*Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1318 (Fed.

Cir. 2000).  In order to render an otherwise properly issued patent

unenforceable on the basis of an applicant's actions before the PTO, a

court must be satisfied by clear and convincing evidence that inequitable

conduct has occurred.  *Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*, 190 F.3d

1360, 1367 (Fed. Cir. 1999).  Since the inequitable conduct inquiry

revolves around the issues of intent and materiality, disputed triable

questions of fact are normally implicated, making the issue not particularly

well-suited for resolution on motion for summary judgment.  *Paragon*

*Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1190 (Fed. Cir.

---

   [2]    It has been said that the inequitable conduct defense has seemingly "attached to every patent prosecution, diverting the court from genuine issues and simply spawning satellite litigation." *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1482 (Fed. Cir. 1998).  The frequency with which allegations of inequitable conduct are incanted in response to infringement claims has led the Federal Circuit to observe that "the habit of charging inequitable conduct in almost every major patent case has become an absolute plague." *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988).

1993).

The requirement of disclosure addressed by HP's inequitable conduct claim finds its roots in a regulation which, as it existed during the pendency of the '115 patent application, imposed a duty of candor and good faith in dealing with the PTO on each individual associated with the filing and prosecution of a patent application "commensurate with the degree of involvement in the preparation or prosecution of the application." 37 C.F.R. § 1.56(a) (1987).[3] The obligation imposed under the applicable version of that section included a duty to disclose to the PTO all information which is known to be material to the examination of the application.[4] 37 C.F.R. § 1.56(a).

Analysis of a claim of inequitable conduct based upon a patentee's failure to disclose information to the patent examiner is informed by whether (1) the information not revealed was material and, additionally, (2) in failing to communicate the information, the inventors intended to

---

[3]     The PTO significantly revised the earlier version of 37 C.F.R. § 1.56 in 1992 in order to incorporate a more specific definition of "materiality". *See* 56 FR 37321-01, 57 FR 2021-02. In *PerSeptive Biosystems, Inc.*, the Federal Circuit acknowledged this change but applied the former version of the rule since it had been in effect when the patents at issue were prosecuted. 225 F.3d at 1321-22 n.2. Since the '115 patent was prosecuted well prior to the advent of the 1992 revision, I have applied the test enunciated in the previous version of 37 C.F.R. § 1.56.

[4]     Information which is subject to disclosure under section 1.56 includes both patents and printed publications. 35 U.S.C. § 102.

deceive or mislead the PTO.  *See Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995).

Resolution of the issue by a court of a claim of inequitable conduct entails a two-step process.  The trial court must first determine whether the withheld reference meets a threshold level of materiality, and additionally whether the evidence presented establishes an intent to mislead the PTO.  *See Molins PLC*, 48 F.3d at 1178.  If satisfied that the evidence meets or exceeds these threshold levels of intent to mislead and materiality, the court must then weigh the materiality and intent.  *Id.*; *see also ConMed Corp. v. Erbe Electromedizin GmbH*, 241 F. Supp.2d 187, 194 (N.D.N.Y. 2003) (Hurd, J.), *vacated pursuant to settlement*, No. 00-CV-987, 2004 WL 1576596 (N.D.N.Y. June 29, 2004).  When assessing these factors, the court must consider that the more material the omission or misrepresentation, the lower the level of intent which is required; conversely, when persuasive evidence of an intent to deceive is offered, a diminished showing of materiality is required in order to establish inequitable conduct.  *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997) (citation omitted); *ConMed*, 241 F.Supp.2d at 194.

Information is material to examination of a patent application "'where

8

there is a substantial likelihood that a reasonable examiner would consider it important in deciding to allow the application to issue as a patent.'" *Digital Control, Inc. v. Charles Mach. Works,* 437 F.3d 1309, 1315 (Fed. Cir. 2006) (quoting 37 C.F.R. § 1.56 (1977)).  When the duty of disclosure is violated intentionally, or in bad faith, a patent should not issue in response to the application.  *Burlington Indus., Inc.*, 849 F.2d at 1421 (citing 37 C.F.R. § 1.56).

The threshold inquiry into the issue of materiality requires a detailed factual analysis of the relevance of the teachings of the reference in question, both with respect to the claims at issue and in connection with prior art which was before the examiner.  *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1367 (Fed. Cir. 2003).  There is no obligation to disclose an otherwise material reference if it is cumulative or less material than prior art already before the examiner.  *Halliburton Co. v. Schlumberger Tech. Corp.*, 925 F.2d 1435, 1440 (Fed. Cir. 1991).  When determining whether uncited prior art is more material than that which was proffered to the examiner, courts should consider the degree of similarity and differences between the prior art and the claims involved; in making this determination, a court must also consider portions of the prior art references which teach away from the claimed invention.  *Id.* at 1441.

When examining intent to deceive, the court must weigh all evidence, including proof of good faith, *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274 (Fed. Cir. 2001), bearing in mind the admonition that "[c]lose cases should be resolved by disclosure, not unilaterally by the applicant." *LaBounty Mfg., Inc. v. U.S. Int'l Trade Comm'n*, 958 F.2d 1066, 1076 (Fed. Cir. 1992).  Intent may be inferred where the applicant knew, or should have known, that withheld information would be material to the PTO's consideration.  *Critikon, Inc.*, 120 F.3d at 1256.

In assessing intent a court must also be cognizant of the fact that intent to deceive is rarely suggested by direct evidence.  *GFI, Inc.*, 265 F.3d at 1274 (citation omitted); *Elk Corp. of Dallas v. GAF Bldg. Materials Corp.*, 168 F.3d 28, 32 (Fed. Cir. 1999).  "Intent . . . is most often proven by a showing of acts, the natural consequences of which are presumably intended by the actor." *Molins PLC*, 48 F.3d at 1180 (citation omitted).  In the absence of direct evidence, intent to deceive can be inferred from proven facts and circumstances which indirectly suggest such a motivation.  *Id.* at 1180-81.

B.    Bifurcation Standard

HP's motion implicates Rule 42(b) of the Federal Rules of Civil Procedure, which provides, in pertinent part, that "the court, in furtherance

of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial . . . of any separate issue[.]"  Fed.R.Civ.P. 42(b); *see also Amato v. City of Saratoga Springs, New York*, 170 F.3d 311, 316 (2d Cir. 1999).  The decision of whether to bifurcate a trial "is a matter within the sound discretion of the trial court."  *Getty Petroleum Corp. v. Island Transp. Corp.*, 862 F.2d 10, 15 (2d Cir. 1988).  As the rule itself provides, however, the court must "always preserv[e] inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution[.]"[5] Fed.R.Civ.P. 42(b).

When exercising its discretion to order such relief, the court must consider "whether bifurcation would (1) avoid unfair prejudice to a party, (2) provide for convenience, and (3) expedite the proceedings and be more economical." *Carson v. City of Syracuse*, No. 92-CV-777, 1993 WL 260676, at *2 (N.D.N.Y. July 7, 1993) (McCurn, S.J.); *see also Witherbee v. Honeywell, Inc.,* 151 F.R.D. 27, 29 (N.D.N.Y. 1993) ( Scullin, J.).  The burden of demonstrating that bifurcation is appropriate rests with the party seeking such relief.  *Aldous v. Honda Motor Co., Ltd.*, No. 94-CV-1090,

---

[5]    In addition to analyzing the motion under the discretionary standard articulated in Rule 42(b), in its opposition Cornell also invokes its right to a jury trial under the Seventh Amendment.

1996 WL 312189, at *1 (N.D.N.Y. May 30, 1996) (McAvoy, C.J.).

In order for separate trials in a single case to be appropriate, the issues to be bifurcated must be distinct; bifurcation is not suitable where the same witnesses may be required to testify at both stages, and where the evidence pertaining to the issues to be separately tried can reasonably be expected to overlap. *Id.*, at *1-*2; *see also Hanlin Group, Inc. v. Village of Solvay, New York*, No. 88-CV-773, 1990 WL 164694, at *1 (N.D.N.Y. Oct. 15, 1990) (McAvoy, J.) (denying bifurcation in order to promote efficiency in light of evidentiary overlap).

The practice of bifurcating trials in patent infringement actions to first address claims of inequitable conduct, leaving for a later determination, if necessary, resolution of the other claims and defenses typically asserted in such actions, has been endorsed by the Federal Circuit for many years, and indeed recently garnered renewed support. *See Agfa Corp., v. Creo Products Inc.*, 451 F.3d 1366, 1371-73 (Fed. Cir. 2006); *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1211-13 (Fed. Cir. 1987). In *Gardco*, and again in *Agfa*, the Federal Circuit rejected claims by patent holders that because of the overlap in fact issues surrounding claims of patent unenforceability, a defense for resolution by the court, and the legal defense of invalidity based upon anticipation reflected in prior art, there is

12

a constitutional entitlement to a jury trial of the common issues, the court

noting that the standards for evaluating prior art for materiality, for

purposes of inequitable conduct, and in the context of anticipation,

although similar, differ in significant respects.  *Agfa Corp.*, 451 F.3d at

1371-73; *Gardco Manufacturing, Inc.*, 820 F.2d at 1211-13.  The Federal

Circuit also implied in *Gardco* that the interests of judicial economy could

favor bifurcation in a case such as this since a finding of unenforceability,

based upon inequitable conduct, would obviate the need to conduct

further proceedings in the case.  820 F.2d at 1210-13.  Applying this

reasoning several trial courts addressing infringement claims similar to

those now presented have granted requests for bifurcation, either upon

stipulation of the parties, *e.g.*, *McKesson Info. Solutions, Inc. v. Bridge

Medical, Inc.*, No. CIVS022669, 2006 WL 1652518, at *1 (E.D. Cal. June

13, 2006), or over objection of the patent holder.  *Agfa Corp.*, 451 F.3d at

1371; *see also*, *e.g.*, *REFAC Int'l. Ltd. v. Lotus Dev. Corp.*, 887 F. Supp.

539 (S.D.N.Y. 1995), *aff'd*, 81 F.3d 1576 (Fed. Cir. 1996).  Others,

however, have taken a contrary position, finding that the interests of

judicial economy do not favor conducting two separate trials, in light of the

significant overlap in proof to be offered at both.  *E.g.*, *Medtronic Xomed,

Inc. v. Gyrus ENT LLC*, No. 3:04-cv-400-J-32, 2006 WL 2147706, at *2

(M.D. Fla. Aug. 1, 2006).

In this instance HP asserts that the interests of judicial economy favor bifurcation.  In support of that position, it argues that the strength of its inequitable defense claim is unusually strong.  While unquestionably, HP's inequitable conduct defense in this action is colorable, it should be recalled that the burden of proof applicable to that claim is high, an accused infringer having the burden of demonstrating inequitable conduct by clear and convincing evidence.  *See Seiko Epson*, 190 F.3d at 1367.  Having reviewed the matter in the context of that burden of proof, I am unable to conclude with certainty that HP is destined to prevail on its unenforceability defense.

Given this finding that the outcome of a bifurcated bench trial on unenforceability is at best uncertain, I must look to the potential advantages and efficiencies associated with proceeding with a single trial and those which would result from bifurcation, as well as prejudice which would result depending on which alternative is chosen.  In this instance, the prior art upon which the inequitable conduct claim turns, including the Tjaden-Flynn article, is largely common to both the inequitable conduct defense and defendant's claim of patent invalidity based upon anticipation.  Consequently, both the court during a bench trial on

14

inequitable conduct, and the jury at a later trial, if there is to be one,

addressing Cornell's claims of infringement and the various defenses

raised by HP, would be presented with the same, duplicative testimony

regarding the significance of that article to the technology practiced and

claims contained in the '115 patent.  As HP itself has candidly

acknowledged, there would therefore be significant overlap in the proof

offered and the witnesses testifying at both trials in the event of

bifurcation.

It is true that the question of intent to deceive the patent office is not

common to both defendant's invalidity and inequitable conduct defenses,

bearing relevance only to the inequitable conduct defense.  Defendant

acknowledges, however, that this is the typical case where no direct

evidence of the inventor's intent to deceive will be offered at trial.  HP

instead asserts that intent should be inferred based upon the high degree

of materiality of the prior art in issue, coupled with the implausibility of the

inventor's explanation as to why it was not disclosed to the patent

examiner.  As such, it is not readily apparent that substantial segments of

testimony to be offered on the inequitable conduct defense will be

unnecessarily placed before the jury in a trial on the merits.

Given the length of time this action has been pending, and the age

15

of the '115 inventor, Dr. Torng, Cornell would potentially suffer significant

prejudice should the court order bifurcation, a step which would

undoubtedly interject further, substantial delay in the ultimate scheduling

of a trial in this matter.  While it could also be said that HP will be

prejudiced by any denial of its motion, since it could then be required to

incur the expense of a full trial on all issues even in the event of success

on its inequitable conduct defense, in the court's view that prejudice would

be significantly less in degree than that which plaintiffs would suffer,

should the motion be granted.

In sum, I find that the interest of conserving judicial resources; the

potential prejudice which may be experienced by the respective parties,

depending on the outcome of this motion; consideration of the

convenience of witnesses; and other relevant factors mitigate in favor of

denial of HP's motion to bifurcate.  Instead of addressing defendant's

inequitable conduct defense through bifurcation, I recommend that the

trial court follow the procedure outlined in *Herman v. Williams Brooks

Shoe Company*, No. 95 CIV. 1324, 1998 WL 832609 (S.D.N.Y. Dec. 1,

1998), and adopted by this court in *Cargill, Inc. v. Sears Petroleum &

Transport Corp.*, 334 F.Supp. 2d 197 (N.D.N.Y. 2004), initially asking the

jury, in an advisory capacity, to address the threshold questions of

materiality and intent to deceive, with the aim of determining, based upon the jury's findings and after weighing the questions of materiality and intent to deceive, whether the patent in suit should be declared unenforceable based upon inequitable conduct on the part of the inventor and his agents.

IV.     SUMMARY AND RECOMMENDATION

Having carefully considered the arguments of counsel and the factors which weigh both in favor of and against bifurcation, I conclude that considerations of fairness to witnesses and the parties, and conservation of judicial resources, weigh against bifurcation, which would require the court to consider and hear significantly overlapping testimony and evidence at the two contemplated trials, and in favor of a single, unified trial addressing all of the claims and defenses in the action. Accordingly, it is hereby

RECOMMENDED, that defendant's motion for bifurcation and separate trials on the question of inequitable conduct and the remaining claims and defenses (Dkt. No. 653) be DENIED in all respects.

NOTICE:  pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report-recommendation.  Any objections shall be filed with the clerk of the court.

FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL

PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

        It is further ORDERED that the Clerk of the Court serve a copy of

this report and recommendation upon the parties electronically.


Dated:  August 15, 2006
        Syracuse, New York

David E. Peebles
U.S. Magistrate Judge


G:\Civil\2001\01-CV-1974\order17.wpd