UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CORNELL UNIVERSITY, a non-profit
New York corporation, and CORNELL
RESEARCH FOUNDATION, INC., a non-
profit New York corporation,

   *Plaintiffs*,

  v.

HEWLETT-PACKARD COMPANY, a
Delaware corporation,

   *Defendant*.

---

HEWLETT-PACKARD COMPANY, a
Delaware corporation,

   *Counterclaimant*,

  v.

CORNELL UNIVERSITY, a non-profit
New York corporation, and CORNELL
RESEARCH FOUNDATION, INC., a non-
profit New York corporation,

   *Counterdefendants*.

---

**DEFENDANT HEWLETT-PACKARD
COMPANY'S PROPOSED FINAL JURY
INSTRUCTIONS**

Civil Action No.:
01-CV-1974-NAM-DEP

Judge: Hon. Randall R. Rader
Trial: May 19, 2008

Defendant Hewlett-Packard Company ("HP") respectfully requests that the Court give the following final jury instructions to the jury.

Dated: May 5, 2008                              Respectfully Submitted,


                                    _____/s/ Erin Penning_____
                                    John Allcock (Bar Roll No. 502997)
                                    Sean Cunningham (Bar Roll No. 513394)
                                    Arthur A. Wellman, Jr. (Bar Roll No. 513520)
                                    Erin Penning (Bar Roll No. 513579)
                                    **DLA PIPER US LLP**
                                    401 B Street, Suite 1700
                                    San Diego, CA  92101-4297
                                    Tel:  619.699.2700 Fax:  619.699.2701
                                    E-mail: john.allcock@dlapiper.com

                                    Barry K. Shelton (Bar Roll No. 503040)
                                    **FISH & RICHARDSON P.C.**
                                    111 Congress Avenue, Suite 810
                                    Austin, Texas 78701
                                    Tel: 512.226.8105 Fax: 512.320.8935
                                    Email: shelton@fr.com

                                    James C. Moore (Bar Roll No. 102219)
                                    Jerauld E. Brydges (Bar Roll No. 511646)
                                    **HARTER, SECREST & EMERY LP**
                                    1600 Bausch & Lomb Place
                                    Rochester, NY  14604-2711
                                    Tel: 585.232.6500 Fax: 585.232.2152
                                    E-mail: jbrydges@hselaw.com

                                    Attorneys for Defendant/Counterclaimant
                                    Hewlett-Packard Company

## TABLE OF CONTENTS

**Page**

INTRODUCTORY INSTRUCTIONS ........................................................................................1

    SUMMARY OF CONTENTIONS...................................................................................2

    THE PARTIES AND THEIR CONTENTIONS ............................................................2

PATENT CLAIMS ....................................................................................................................4

    THE ROLE OF THE CLAIMS OF A PATENT ...........................................................4

    CONSTRUCTION OF THE CLAIMS...........................................................................5

    INDEPENDENT AND DEPENDENT CLAIMS ...........................................................6

    COMPRISING" CLAIMS ..............................................................................................6

    LIMITATIONS OF THE CLAIMS AT ISSUE ............................................................7

    INDEPENDENT AND DEPENDENT CLAIMS ...........................................................7

    CLAIM INTERPRETATION..........................................................................................8

    "MEANS PLUS FUNCTION" CLAIMS........................................................................8

INFRINGEMENT......................................................................................................................9

    INFRINGEMENT GENERALLY...................................................................................9

    DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT" ...............................10

    "LITERAL INFRINGEMENT" BY "MEANS PLUS FUNCTION" CLAIM
    ELEMENTS...................................................................................................................11

    DIRECT INFRINGEMENT UNDER THE "DOCTRINE OF EQUIVALENTS"........13

    ACTIVE INDUCEMENT .............................................................................................15

    CONTRIBUTORY INFRINGEMENT ........................................................................16

    INFRINGEMENT: CLAIM-BY-CLAIM .....................................................................17

    WILLFUL INFRINGEMENT ......................................................................................18

VALIDITY ..............................................................................................................................20

INVALIDITY – BURDEN OF PROOF.........................................................................20

WRITTEN DESCRIPTION REQUIREMENT.............................................................21

ENABLEMENT ...........................................................................................................22

PRIOR ART..................................................................................................................23

ANTICIPATION ..........................................................................................................24

OBVIOUSNESS .................................................................................................................25

THE SCOPE AND CONTENT OF THE PRIOR ART ................................................27

DIFFERENCES BETWEEN THE INVENTION OF THE CLAIMS AND THE
PRIOR ART..................................................................................................................27

LEVEL OF ORDINARY SKILL ................................................................................28

DETERMINATION OF OBVIOUSNESS...................................................................29

DAMAGES.........................................................................................................................29

DAMAGES - BURDEN OF PROOF ..........................................................................29

REASONABLE ROYALTY - DEFINITION ..............................................................30

DAMAGES – ENTIRE MARKET VALUE RULE.............................................................34

PATENT EXHAUSTION/IMPLIED LICENSE..................................................................35

DELIBERATIONS .............................................................................................................36

ELECTION OF FOREPERSON; DUTY TO DELIBERATE;
COMMUNICATIONS WITH COURT; CAUTIONARY; UNANIMOUS
VERDICT; VERDICT FORM .....................................................................................36

## INTRODUCTORY INSTRUCTIONS

Members of the jury, the instructions I gave at the beginning of the trial and during the trial remain in effect.  I now give you some additional instructions.

You must, of course, continue to follow the instructions I gave you earlier, as well as those I give you now.  You must not single out some instructions and ignore others, because all are important.  The instructions I am about to give you now are in writing and will be available to you in the jury room.  I emphasize, however, that this does not mean they are more important than my earlier instructions.  As you are aware from the presentation of the evidence, we must address several areas of law.  I will identify each issue, the particular questions will answer during your deliberations, and the law you must follow.

Please listen carefully to everything that I say.  You will be provided with a jury form with questions.  Your foreperson must sign and date that form.

Juror's duties.

You have two main duties as jurors.  First, you must decide what the facts are from the evidence that you saw and heard here in court.  Second, you must take the law that I give you, apply it to the facts and answer the questions in the verdict form.

It is my job to instruct you about the law.  You are bound by the oath that you took at the beginning of the trial to follow these instructions.  My instructions will include an instruction on the meanings of many of the terms in the patent claims.

Evidence.

You must make your decision based only on the evidence that you saw and heard here in court.  The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, the Orders which have been previously entered by the Court, and the facts which I will instruct you to take as true.

1

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.  Any of the comments and questions are not evidence.

You should use your common sense in weighing the evidence, consider it in light of your everyday experience and give it whatever weight you believe it deserves.

Witnesses.

In determining the weight to give to the testimony of a witness, you should ask yourself whether the evidence tended to show that the witness testified falsely about some fact, or, whether the evidence showed that at some other time the witnesses said or did something or failed to say or do something that was different from the testimony at trial.

Experts.

When specialized knowledge or experience before a particular matter may be helpful to the jury, a person who has special training or experience in that technical field, called an expert witness, may state his opinion on those technical matters.

Authority:

8th Circuit Civil Jury Instruction §1.05 (2007) (adapted); Closing Jury Instructions in *Loral Fairchild v. Victor Company of Japan, Ltd. et al*., CV-92-128-RRR (Judge R. Rader sitting by designation).

## THE PARTIES AND THEIR CONTENTIONS

I will now review for you the parties in this action and the positions of the parties that you will have to consider in reaching your verdict.

Cornell alleges that HP infringes, contributes to the infringement, and induces others to infringe claims 1, 2, 6, 14, 15, and 18 of the '115 patent.  Cornell further claims that HP's infringement was willful.  Cornell seeks damages in the form of a reasonable royalty to compensate it for the infringement.

2

HP denies Cornell's claims.  HP also contends that the asserted claims of the '115 patent are invalid.

Source:

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction No. 5, 5.1, 5.2, 5.3 (2006) (adapted).

**BURDENS OF PROOF**

In legal action, facts must be proven by a specified standard, known as the "burden of proof."

In this case, Cornell contends that HP has infringed certain claims of its '115 patent.  The burden of proof on these questions is known as a "preponderance of evidence."  It requires that, in order for Cornell to prevail, you must be persuaded that what Cornell seeks to prove is more probably true than not true.

Similarly, Cornell has the burden of proving damages by a preponderance of the evidence.  This means that the evidence must persuade you that it is more probably true than not true that Cornell has been damaged by HP's alleged infringement.

Cornell must prove willful infringement by "clear and convincing evidence."  This means that the evidence must persuade you that it is highly probable that HP willfully infringes the asserted claims of the '115 patent.

Also in this case, HP contends that Cornell's '115 patent are invalid.  The burden of proof on this question is called "clear and convincing evidence."  It requires that, in order for HP to prevail, you must be persuaded that it is highly probable that what HP seeks to prove is true.

You may have heard of a burden of proof used in criminal cases called "beyond a reasonable doubt."  That burden of proof is the highest standard.  It does not apply to a patent case such as this one, and you should therefore put it out of your mind.

Source:

PRELIMINARY JURY INSTRUCTIONS [PATENT] IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE (Rev. 1/18/06)(modified); NINTH CIRCUIT MODEL CIVIL JURY INSTRUCTIONS, Instruction Nos. 1.13, 1.14 (2006)(modified); combined with Cornell's Proposed Instruction No. 1.2 (Burdens of Proof) (willfulness and damages).

## PATENT CLAIMS
## THE ROLE OF THE CLAIMS OF A PATENT

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."

The patent claims are the numbered sentences at the end of each patent.  The claims are important because it is the words of the claims that define what a patent covers.  The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims but it is the claims that define how broad or narrow the patent's coverage is.  Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim.  Therefore, what a patent covers depends, in turn, on what each of its claims cover.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.  The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims and I provided you my definitions of certain claim terms.  You must accept my definitions of these words in the claims as being

correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

Authority:

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction B.2.1 (2008) (adapted).

## THE CLAIMS OF THE PATENTS-IN-SUIT

As I told you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent. The claims describe the invention made by the inventor and describe what the patent owner owns. Claims may describe products.

Claims are usually divided into parts or steps, called "limitations." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate limitation of the claim.

Source:

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction No. 7 (2006) (adapted).

## CONSTRUCTION OF THE CLAIMS

In deciding whether or not an accused product infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use them when you decide whether or not the patent is infringed, and whether or not it is invalid.

Source:

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction No. 7.1 (2006) (adapted).

## INDEPENDENT AND DEPENDENT CLAIMS

Patent claims may exist in two forms, referred to as independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. Claims 1, 6, 14 and 15 of the '115 patent, for example, are independent claims.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the elements of the other claim or claims to which it refers, as well as the additional elements recited in the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers.

For example, claims 2 and 18 of the '115 patent are dependent claims. Claims 2 depends from independent claim 1, and claim 28 depends from independent claim 15. To determine what a dependent claim covers, the words of that claim and all of the claims from which it depends must be read together.

Source:

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction No. 7.2 (adapted).

## COMPRISING" CLAIMS

The beginning portion, or preamble, of claims 1, 6, 14 and 15 of the '115 patent uses the word "comprising." "Comprising" means "including" or "containing." A claim that uses the word "comprising" or "comprises" is not limited to products having only the elements recited in the claim, but also covers products that add additional elements.

Let's take our example of the claim that covers a table.  If the claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains additional structures, such as a leaf or wheels on the legs.

 Source:

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction No. 7.5 (adapted).

## LIMITATIONS OF THE CLAIMS AT ISSUE

I have now instructed you as to the types of claims at issue in this case.  I will next define the meaning of the words used in the patent claims at issue.  You must use the definitions I provide to you in your consideration of infringement and invalidity issues.

**[Provide Glossary of Construed Claim Terms.]**

I am providing you with a written copy of these definitions for your use during deliberations.

Source:

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction No. 7.8.

## INDEPENDENT AND DEPENDENT CLAIMS

This case involves two types of patent claims:  independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  In this case, Claims 1, 6, 14 and 15 of the '115 Patent are each independent claims.

Claims 2 and 18 in the '115 Patent are "dependent claims."  A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its

7

requirements.  In this way the claim "depends" on another claim.  The law considers a dependent claim to incorporate all of the requirements of the claim to which it refers.  The dependent claim then adds its own, additional, requirements.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim to which it refers. A product or process that meets all of the requirements of both the dependent claim and the claim to which it refers is covered by that dependent claim.

Claim 2 is a dependent claim which refers to Claim 1 and Claim 18 is a dependent claim which refers to Claim 15.

Authority:

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction B.2.2a (2008) (adapted).

## CLAIM INTERPRETATION

I have given you a handout that explains the meaning of some of the words of the claims in this case.  As I have previously instructed you, you must accept my definition of these words in the claims as correct.  For any words in the claim for which I have not provided you with a definition, you should apply their plain English meaning.  You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide that issues that you are being asked to decide, such as infringement and invalidity.  Those issues are yours to decide.

Authority:

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction B.2.3 (2008) (adapted).

## "MEANS PLUS FUNCTION" CLAIMS

Claims 1 and 14 use the phrases "means for detecting…" and "means for issuing…." These "means for" phrases have a special meaning in patent law.  They are called "means plus function" requirements.  They do not cover all of the structures that could perform the functions set forth in the claims, namely "means for detecting" and "means for issuing."  Instead, they

8

cover a structure that performs the respective function and that is either identical or "equivalent" to the structure described in the patent for performing that function.  The issue whether two structures are identical or equivalent is for you to decide.  I will explain to you later how to determine whether two structures or two sets of structures are "equivalent" to another.

In Claims 1 and 14 of the '115 Patent, I have identified the "means for detecting…" and "means for issuing…" clauses as means-plus-function.  In Claims 1 and 14, the function for the "means for detecting…" clause is "determining the existence of a plurality of instructions that are ready to be issued at the same time because they are data dependency free."  In Claims 1 and 14, the function for the "means for issuing…" clause is "issuing multiple and non-sequential (i.e., out-of-order) instructions within a single processor cycle that have become dependency free."  The structure corresponding to this function is a "reservation circuit."  When I read you my definitions for certain claim terms a few moments ago, I identified the acts described in the patent for performing the relevant functions.  You should apply my definitions of the functions and the structures for these means-plus-function clauses as you would my definition of any other claim term.

Authorities

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction B.2.3a (2008) (adapted); March 26, 2004 Memorandum-Decision and Order.

## INFRINGEMENT
## INFRINGEMENT GENERALLY

I will now instruct you how to decide whether or not Hewlett-Packard has infringed the '115 Patent.  Infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but not infringement as to another.

In this case, there are three possible ways that a claim may be infringed.  I will explain the requirements for each of these three types of infringement to you.  The three types of infringement are called: (1) direct infringement; (2) active inducement; and (3) contributory

9

infringement.  A party can directly infringe a patent by literal infringement or infringement under the doctrine of equivalents.  I will explain the meaning of all of these to you later in more detail.

In this case, Cornell has alleged that Hewlett-Packard directly infringes the '115 Patent. In addition, Cornell has alleged that customers of Hewlett-Packard directly infringe the '115 Patent, and Hewlett-Packard is liable for actively inducing or contributing to that direct infringement by customers of Hewlett-Packard.

In order to prove infringement, Cornell must prove the requirements for one or more of these types of infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

Authorities

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction B.3.1 (2008) (adapted); June 4, 2007, Court Order Granting Stipulation, Dkt. 805.

**DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT"**

There are two types of "direct infringement":  (1) "literal infringement" and (2) "infringement under the doctrine of equivalents."  I will first explain the circumstances under which you may find "literal infringement."

A person or company directly infringes a claim by "literal infringement" if, during the time the patent is in force, the person or company makes, uses, sells, or offers to sell within, or imports into, the United States or its territories (including Puerto Rico), a product or process that meets all of the requirements of the claim and does so without the permission of the patent holder.  To determine whether a particular product or process meets all of the requirements of a claim, you must understand the meaning of the words in the claim and the requirements that these words impose.  I have already explained to you the meaning of some of the words of the claims in this case.  I have also explained to you that other words in the claims should be given

their plain English meaning.  You must compare the product or process with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

When the product or process meets all of the requirements of a claim, the product or process is said to "literally infringe" that claim.  If a product or process that literally infringes a claim is made, used, sold, offered for sale within, or imported into, the United States or its territories (including Puerto Rico), during the time the patent is in force, without patent holder's authorization, it directly infringes the claim.

In order to prove direct infringement by literal infringement, Cornell must prove that the above requirements are met by a preponderance of the evidence, i.e., that it is more likely than not that Hewlett-Packard made, used, sold, offered for sale within, or imported into, the United States or its territories (including Puerto Rico), during the time the '115 Patent was in force, a product  that meets all of the requirements of at least one asserted claim of the '115 Patent.

Authorities

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction B.3.1a (2008) (adapted); AIPLA MODEL PATENT JURY INSTRUCTIONS, 3.4 (2008).

## "LITERAL INFRINGEMENT" BY "MEANS PLUS FUNCTION" CLAIM ELEMENTS

As I have previously explained, Claims 1 and 14 of the '115 Patent include "means for detecting…" and "means for issuing…" clauses as means-plus-function claim elements.

In Claims 1 and 14, the function for the "means for detecting…" clause is "determining the existence of a plurality of instructions that are ready to be issued at the same time because they are data dependency free."  The structure corresponding to this function is the "dispatch stack" as defined for Claims 1 and 14.

In Claims 1 and 14, the function for the "means for issuing…" clause is "issuing multiple and non-sequential (i.e., out-of-order) instructions within a single processor cycle that have become dependency free."  The structure corresponding to this function is a "reservation circuit."

11

A "reservation circuit" is a common component used with processors and has conventional arbitration logic (i.e., circuitry).

A product meets the means-plus-function requirements of the claims if two conditions are met:

(1) it has a structure or a set of structures that performs the identical function recited in the claim and (2) that structure or set of structures is either identical or "equivalent" to the structure that I defined earlier as performing the function.  If the product does not have any structure or set of structures that performs the specific function recited in the claim, the "means-plus-function" requirement is not met, and the product does not literally infringe the claim.  Alternatively, if the product has a structure that performs the function recited in the claim but that structure or set of structures is not either identical or "equivalent" to the structure that I defined to you as being described in the patent and performing this function, the product does not literally infringe.

A structure or a set of structures is "equivalent" to the structure I have defined as being described in the patent if a person having ordinary level of skill in the field of technology of the patent would have considered the differences between them to be insubstantial at the time the alleged infringement occurred.  In deciding whether the differences would be "insubstantial," you must also consider whether the structures or sets of structures work in substantially the same way to achieve substantially the same result.  You must also consider whether, at the time of the alleged infringement, a person having an ordinary level of skill in the field of technology of the patent would have known of the interchangeability of the two structures or sets of structures.  Interchangeability itself is not sufficient; in order for the structures to be considered to be interchangeable, the interchangeability of the two structures must have been known to persons of ordinary skill in that are at the time the invention was made.

In order to prove direct infringement by literal infringement of means-plus-function limitation, Cornell must prove the above requirements are met by a preponderance of the

evidence, *i.e.*, that it is more likely than not Hewlett-Packard's products have a structure or a set of structures that performs the identical function recited in the claim and that structure or set of structures is either identical or "equivalent" to the structure that I defined earlier as being described in the patent as performing this function.

Authorities

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction B.3.1b (2008) (adapted); March 24, 2006 Memorandum Decision and Order.

**DIRECT INFRINGEMENT UNDER THE "DOCTRINE OF EQUIVALENTS"**

If a person or company makes, uses, sells, offers to sell within, or imports into, the United States or its territories, a product or process that does not literally meet all the requirements of the claim, there can still be direct infringement if that product or process satisfies that claim "under the doctrine of equivalents."

I will now explain the circumstances under which you may find that a product or process satisfies a claim under the doctrine of equivalents.

Under the doctrine of equivalents, a product or process satisfies a claim if, for each and every requirement of the claim that is not literally present in the accused product or process, the accused product or process has some corresponding alternative feature that is "equivalent" to the unmet claim requirement. I will explain to you shortly what "equivalent" means. Depending on the nature of the requirement that is not met literally, the alternative feature of the product or process may be an alternative component, ingredient, act, or a relationship between components, ingredients, or acts.

In making your decision as to whether or not a product or process is equivalent under the doctrine of equivalents, you must look at each and every requirement of that claim and decide whether or not the product or process either meets that requirement or has some alternative feature that is "equivalent" to the unmet requirement. If it does, the product or process satisfies

the claim under the doctrine of equivalents.  If instead, (1) the product or process has an alternative to the unmet requirement but the alternative is not "equivalent" to the unmet requirement; or (2) the product or process has no corresponding alternative feature to the unmet requirement, you must find that the requirement is not satisfied under the doctrine of equivalents and there is no infringement under the doctrine of equivalents.

I will now explain how to determine whether an alternative feature of the product or process at issue is "equivalent" to a requirement of the claim.  An alternative is considered to be "equivalent" to an unmet requirement of a claim if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" at the time of the alleged infringement.  In deciding whether an alternative feature of product or process is equivalent to an unmet requirement of the claim, you may consider whether the alternative feature and the unmet claim requirement:  (1) perform substantially the same function; and (2) work in substantially the same way; (3) to achieve substantially the same result.  You may also consider whether, at the time of the alleged infringement, a person having ordinary skill in the field of technology of the patent would have known of the interchangeability of the alternative feature and the unmet requirement of the claim.  Interchangeability at the present time is not sufficient; in order for the structures to be considered to be interchangeable, rather, the interchangeability of the two structures must have been known to persons of ordinary skill in the field of technology of the invention are at the time the invention was made.

In order to prove infringement by "equivalents," Cornell must prove by a preponderance of the evidence that any differences between the unmet requirement and the alternative are insubstantial.  This means that Cornell must prove that it is more likely than not Hewlett-Packard's product or process has an alternative feature that is "equivalent" to the unmet claim requirement.

When the claim requirement that is not met by the product or process is one of the "means-plus-function" requirements that I have defined for you, whether or not the unmet claim

requirement is satisfied under the doctrine of equivalents depends on your reason for determining that the claim requirement was unmet.

If you determined that there is no "literal infringement" because there is no structure or set of structures in the product or process that performs the function of the means-plus-function requirement, the product or process, nonetheless, satisfies the requirements of the claim under the doctrine of equivalents if it has an "equivalent" structure or set of structures that performs an "equivalent" function.

On the other hand, if you find that the accused product or process has no equivalent structure or set of structures to any of the structures that I defined as performing that function, then you must find that there is no infringement under the doctrine of equivalents.  This is the case even if you find that the accused product or process has some other structure or set of structures that performs the required function.  In other words, for a means-plus-function requirement, a determination that there is no "equivalent" structure for purposes of "literal infringement" precludes you from finding infringement under the "doctrine of equivalents."

Authorities

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction B.3.1c (2008) (adapted).

## ACTIVE INDUCEMENT

Cornell alleges that Hewlett-Packard is liable for infringement by actively inducing its customers to directly infringe the '115 Patent.  As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

A company is liable for active inducement of a claim only if:

(1)     the company takes action during the time the patent is in force which encourages acts by someone else; and

(2)     the encouraged acts constitute direct infringement of that claim; and

(3)     the company is aware of the patent, and knows or should have known that the encouraged acts constitute infringement of that patent; and

(4)     the company has an intent to cause the encouraged acts; and

(5)     the encouraged acts are actually carried out by the someone else.

In order to prove active inducement, Cornell must prove that each of the above requirements are met.  Further, proof of each element must be by a preponderance of the evidence, i.e., that it is more likely than not that each of the above requirements has been met.

In order to establish active inducement of infringement, it is not sufficient that the person or company that is allegedly induced to infringe itself directly infringes the claim.  Nor is it sufficient that Hewlett-Packard was aware of the acts that allegedly constitute the direct infringement.  Rather, you must find that Hewlett-Packard specifically intended to infringe the '115 Patent, in order to find inducement of infringement.  If you do not find that Hewlett-Packard specifically intended to infringe, then you must find that Hewlett-Packard has not actively induced the alleged infringement.

Authorities

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction B.3.2 (2008) (adapted); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster,* No. 04-480 (June 27, 2005); *DSU Medical Corp., v. JMS Co., Ltd.*, Nos. 04-1620, 05-1048, 05-1052 (December 13, 2006) (Fed. Cir.).

## CONTRIBUTORY INFRINGEMENT

Cornell argues that Hewlett-Packard is liable for contributory infringement by contributing to the direct infringement of the '115 Patent by someone else.  As with direct

infringement, you must determine whether there has been contributory infringement on a claim-by-claim basis.

A company is liable for contributory infringement of a claim if:

(1)     the company sells, offers to sell, or imports within the United States or its territories, a component of a product or process during the time the patent is in force; and

(2)     the only substantial use for the component is in a product or process that is covered by the claim, either directly or under the doctrine of equivalents, namely, the product has no substantial, non-infringing use other than the alleged infringing use; and

(3)     the company is aware of the patent and is on notice that the products or processes for which the component has no other substantial use may be covered by a claim of the patent or may satisfy a claim of the patent under the doctrine of equivalents; and

(4)     the component has been used by someone else in a manner that directly infringes the claim.

In order to prove contributory infringement, Cornell must prove that each of the above requirements are met.  This proof of each requirement must be by a preponderance of the evidence, *i.e.*, that it is more likely than not that each of the above requirements is met.

Authorities

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction B.3.3 (2008) (adapted).

## INFRINGEMENT: CLAIM-BY-CLAIM

You must determine, separately, for each of the asserted claims, whether or not there is infringement.  However, as I have explained to you, a dependent claim includes all of the

17

requirements of any of the claims to which it refers, plus additional requirements of its own. Therefore, if you find that an independent claim is not infringed, neither literally or under the doctrine of equivalents, then you must also find that any claim that depends from it is not infringed.  On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the additional requirements of any claims that depend from the independent claim have also been infringed.

<u>Authorities</u>

Federal Circuit Bar Association Model Patent Jury Instructions, Instruction B.3.6 (2008).

## WILLFUL INFRINGEMENT

Cornell argues both that Hewlett-Packard infringed and that Hewlett-Packard infringed willfully.  If you have decided that Hewlett-Packard has infringed at least one valid and enforceable claim of the '115 Patent, you now must decide the additional issue of whether or not this infringement was willful.

To prove willful infringement, Cornell must establish that Hewlett-Packard willfully infringed by clear and convincing evidence.  That is, Cornell must prove willfulness in such a way that you have been left with a clear conviction that the infringement was willful.

Specifically, Cornell must show, by clear and convincing evidence that:

(1)     Hewlett-Packard acted despite an objectively high likelihood that the manufacture or sale of its processors infringed the '115 Patent and the '115 Patent was valid and enforceable.  This occurred if a reasonable person in the position of Hewlett-Packard could not have reasonably believed that it did not infringe the '115 Patent or the Patent was invalid or unenforceable.  The state of mind of Hewlett-Packard is not relevant to this inquiry; thus, you should not consider Hewlett-Packard's own belief in this inquiry.

18

And,

(2)     Hewlett-Packard actually knew, or it was so obvious that Hewlett-Packard should

have known, of this objectively high likelihood.  The state of mind of Hewlett-

Packard is relevant to this inquiry; thus, you may consider Hewlett-Packard's own

belief in this inquiry.

In deciding whether or not Hewlett-Packard's infringement was willful, you must

consider all of the facts, which include but are not limited to:

(1)     Whether or not Hewlett-Packard intentionally copied the '115 Patent;

(2)     Whether or not Hewlett-Packard reasonably believed that it had a substantial

defense to infringement and reasonably believed that the defense would be

successful if litigated;

(3)     Whether or not Hewlett-Packard made a good faith effort to avoid infringing the

patent, for example whether Hewlett-Packard took remedial action upon learning

of the '115 Patent by ceasing infringing activity or attempting to design around

the patent;

(4)     Whether or not Hewlett-Packard tried to cover up its infringement; and

(5)     Whether or not Hewlett-Packard relied on a legal opinion that appeared to it to be

well-supported and believable and that advised Hewlett-Packard (1) that its

products did not infringe the '115 Patent or (2) that the '115 Patent was invalid or

unenforceable.

In assessing these various factors and deciding whether or not Hewlett-Packard's

infringement was willful, you need not find that all of the factors are present.  In addition, no one

or more of these factors are more important than the others.  Rather, you must decide, based on

all the evidence that is presented to you, whether you have a clear conviction that the alleged

infringement was willful.

Authorities

19

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction B.3.8 (2008) (adapted).  35 U.S.C. § 284; *In re Seagate*, 497 F.3d 1360 (Fed. Cir. 2007); *Ball Aerosol and Specialty Container, Inc. v. Limited Brands, Inc.*, No. 05 C 3684, 2008 WL 834443 (N.D. Ill. Mar. 27, 2008); *Cohesive Techs., Inc. v. Waters Corp.*, Nos. 98-12308, 99-11528-DPW, and 01-12307, 2007 WL 2746805 (D. Mass. Aug. 31, 2007); *Energy Transp. Group, Inc. v. William Demant Holding A/S*, No. 05-422, 2008 WL 114861, at *1 (D. Del. Jan. 7, 2008); *Pivonka v. Central Garden & Pet Co.*, No. 02-cv-02394, 2008 WL 486049 (D. Colo. Feb. 19, 2008); *TGIP, Inc. v. AT&T, Corp.*, 527 F. Supp. 2d 561, 578-79 (E.D. Tx. 2007) *Trading Techs., Inc. v. eSpeed, Inc.*, No. 04 C 5312, 2008 WL 63233 (N.D. Ill. Jan. 3, 2008).

## VALIDITY
## INVALIDITY – BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether or not Hewlett-Packard has proven that Claims 1, 2, 6, 14, 15 and 18 of the '115 Patent are invalid.  To prove that any claim of a patent is invalid, Hewlett-Packard must persuade you by clear and convincing evidence.  That is, in order to find a claim invalid you must be left with a clear conviction that the claim is invalid.

I will now instruct you on the invalidity issues that you have to decide in this case.

Authorities

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction B.4.1 (2008) (adapted) *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986).

20

# WRITTEN DESCRIPTION REQUIREMENT

Hewlett-Packard may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the written description of the invention in the patent is not adequate. In the patent application process, the applicant may change the claims between the time the patent application is first filed and the time a patent is finally granted.  An applicant may amend the claims or add new claims.  These changes may narrow or broaden the scope of the claims. The purpose of the written description requirement is to ensure that the patent provides an adequate description of the invention and to ensure that the scope of the claims that are eventually issued remain within the scope of the written description of the invention that was provided with the application as it was first filed.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person of ordinary skill in the field of technology of the patent.  The written description requirement is satisfied if a person of ordinary skill reading the patent application as originally filed would recognize that it describes the invention as it is finally claimed in the issued patent.

The written description requirement may be satisfied by the words, structures, figures, diagrams, formulas, etc., in the patent application, and any combination of them, as understood by one of ordinary skill in the field of the technology of the invention.  A requirement in a claim need not be expressly disclosed in the patent application as originally filed; Provided persons of ordinary skill in the field of technology of the invention would have understand that the missing requirement is inherent in the written description in the patent application.

Authorities

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction B.4.2a (2008).

## ENABLEMENT

HP may establish that a patent claim is invalid by showing by clear and convincing evidence that the patent does not contain a sufficiently full and clear description of the claimed invention. To be sufficiently full and clear, the description must contain enough information to have allowed persons of ordinary skill in the field of technology of the patent to make and use the invention at the time the [original] patent application was filed. This is known as the "enablement" requirement. If a patent claim is not enabled, it is invalid.

In order to be enabling, the patent must permit persons of ordinary skill in the field of technology of the patent to make and use the invention without having to conduct undue experimentation. However, some amount of experimentation to make and use the invention is allowable. In deciding whether a person of ordinary skill in the field of technology relevant to this case would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1) the time and cost of any necessary experimentation;

(2) how routine any necessary experimentation is in the field of [identify field];

(3) whether the patent discloses specific working examples of the claimed invention;

(4) the amount of guidance presented in the patent;

(5) the nature and predictability of the field;

(6) the level of ordinary skill in the field of [identify field]; and

(7) the scope of the claimed invention.

No one or more of these factors is alone dispositive. Rather you must make your decision whether or not the degree of experimentation required is excessive, based upon the evidence presented to you. You should weigh these factors and determine whether or not, in the context of

22

this invention and the state of the art at the time, you have a clear conviction that a person of ordinary skill in the field of technology would have had to experiment excessively to make and use the invention.

Authorities

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction B.4.3a (2008); 35 U.S.C. § 112(1); *Union Pac. Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690-92 (Fed. Cir. 2001); *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1345-46 (Fed.Cir. 2000); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).


## PRIOR ART

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before.  That which came before is referred to as the "prior art."

Cornell and Hewlett-Packard disagree about whether the following documents qualify as "Prior Art":

     (1)  the Tjaden Masters Thesis; and

     (2)  the Tjaden-Flynn Article.

Only a document that qualifies as prior art can be used to invalidate the '115 Patent.  It is Hewlett-Packard's burden to prove by clear and convincing evidence that the documents listed above qualify as prior art.

Printed publications from anywhere in the world are prior art if the printed publications were published, either before the inventor made the claimed invention or more than one year before the application for the patent was filed.

A document is a printed publication if it was reasonably accessible to that portion of the public most likely to use it.  It is not necessary that the publication be available to every member of the public.  Thus, publications may include not only such things as books, periodicals or newspapers, but also publications that are not as widely available to the public, such as trade catalogues, journal articles or scholarly papers that are distributed or available to those skilled in the field of the invention.

The date that a printed publication becomes prior art is the date that it becomes available to the public. Published patent applications are printed publications as of their publication dates.

If a printed publication was published more than one year before the application for the patent was filed, then that publication will be prior art, regardless of the date of invention for the patent claims. The date of invention is irrelevant to this category of prior art.

Source:

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction No. 10.6.7 (adapted).

## ANTICIPATION

Hewlett-Packard may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention is not new.  For the claim to be invalid because it is not new, Hewlett-Packard must show that all of the requirements of that claim are present in a single document that qualifies as prior art.  The document does not have to be in the same words as the claim but all the requirements of the claim must be there, either stated expressly or necessarily implied or inherent in the level of ordinary skill in the art in the technology of the invention at the time of the invention, so that someone of ordinary skill in the field of technology of the patent looking at that one reference would be able to make and use the claimed invention.

Hewlett-Packard alleges that the Tjaden Masters Thesis and the Tjaden-Flynn Article contain all of the elements of Claims 1, 2, 6, 14, 15 and 18 of the '115 Patent.  If you decide that either of these documents qualify as "prior art" then you need to compare each of Claims 1, 2, 6, 14, 15 and 18 of the '115 Patent against that document to determine if it contains all of the requirements of that claim.  You must make this determination separately, for each of the inventions described in each of Claims 1, 2, 6, 14, 15, and 18.  If you decide that neither the Tjaden Masters Thesis or the Tjaden-Flynn Article qualify as prior art then you should not consider whether any Claims of the '115 Patent are anticipated.

HP can show that a patent claim was not new if the claimed invention was patented or described in a printed publication, anywhere in the world, before the invention was made by the inventor, in this case filing date of the application.  A references is a "printed publication" if it was publicly accessible to those interested in the field.

To establish that the claimed invention is invalid, Hewlett-Packard must establish by clear and convincing evidence, that the invention is not new.  That is, based on the evidence presented to you in this case, you must be left with a clear conviction that the claim is not new.

Authorities

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction B.4.3a1 (2008) (adapted).

## OBVIOUSNESS

An inventor is not entitled to a patent if his or her invention would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made.

Unlike anticipation, obviousness may be shown by considering more than one item of prior art. The question is, would it have been obvious for a skilled person who knew of the prior art to make the claimed invention?  If the answer to that question is yes, then the patent claims

are invalid.  HP has the burden of proving by the highly probable standard that claims of Cornell's '115 patent are invalid for obviousness.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention. The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the field of the invention. Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the field of the invention.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill at the time the invention was made.

You must also keep in mind that the test for obviousness is not whether or not it would have been obvious to try to make the invention, but rather whether or not the invention would have been obvious to a person of ordinary skill in the inventor's field at the time the invention was made.

In determining whether or not these claims would have been obvious, you should make the following determinations:

First, what is the scope and content of the prior art?

Second, what differences, if any, are there between the invention of the claims of the patent and the prior art?

Third, what was the level of ordinary skill in the art at the time the invention was made?

Against this background, you must decide whether or not the inventions covered by the '115 patent claims would have been obvious.

26

I will now describe in more detail the specific determinations you must make in deciding whether or not the claimed invention would have been obvious.

Source:

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction No. 10.9.

### THE SCOPE AND CONTENT OF THE PRIOR ART

Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art relied on by HP.  You must decide whether this prior art was reasonably relevant to the particular problem the inventor faced in making the invention covered by the patent claims.  Such relevant prior art includes prior art in the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem.

Source:

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction No. 10.9.1

### DIFFERENCES BETWEEN THE INVENTION OF THE CLAIMS AND THE PRIOR ART

In determining the differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation.  You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of all of the prior art and the understanding of one of ordinary skill in the art.

If there is some motivation or suggestion for a skilled person to make the combination covered by the patent claims, then the claimed invention is obvious.  In deciding whether there is a reason to combine known prior art elements in the manner claimed by the patent, you may consider the interrelated teachings of multiple patents, the effects of demands known to the

27

design community or present in the marketplace, or the background knowledge possessed by a person having ordinary skill in the art. You should also keep in mind that the combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results. If the claimed invention is supposed to be an improvement on the prior art, you must ask whether the improvement is more than the predictable use of prior art elements according to their established functions.

The claimed invention is likely to be obvious if it involves the simple substitution of one known element for another or the mere application of a known technique to a piece of prior art ready for improvement. When a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one. If a person of ordinary skill can implement a predictable variation, it is likely to be obvious. For the same reason, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill.

Source:

*KSR International Co. v. Teleflex Inc.*, 127 S.Ct. 1727 (2007); FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction No. 10.9.2 (2002).

### LEVEL OF ORDINARY SKILL

Obviousness is determined from the perspective of a person of ordinary skill in the art. This person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

Source:

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction No. 10.9.3

## DETERMINATION OF OBVIOUSNESS

HP contends that the invention claimed in claims of 1, 2, 6, 14, 15, and 18 of the '115 patent would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made.  If you find that HP has proved obviousness by the highly probable standard, then you must find that the claims are invalid for obviousness.

Source:

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction No. 10.9.5 (adapted).

## DAMAGES
## DAMAGES - BURDEN OF PROOF

I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win this case, on any issue.  If you find that Hewlett-Packard infringed any valid claim of the '115 Patent, you must then determine the amount of money damages to be awarded to Cornell to compensate it for the infringement.

The amount of those damages must be adequate to compensate Cornell for the infringement, but in no event less than a reasonable royalty for the use made of the invention by Hewlett-Packard.  The damages you award are meant to compensate the patent holder and not to punish an infringer.  Your damages award, if you reach this issue, should put the patent holder in

29

approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty for the use made of the invention.  I will give you more detailed instructions on the calculation of a reasonable royalty shortly.

In this case, Cornell seeks to recover a reasonable royalty on Hewlett-Packard's use of the invention through the sale of HP's accused products.

Cornell has the burden to establish the amount of its damages.  You should award only those damages that Cornell establishes that it more likely than not suffered.  Cornell is not entitled to damages that are remote or speculative.  While Cornell is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  To the extent Hewlett-Packard contends that the amount of damages should be reduced or offset, Hewlett-Packard must prove the amount of such reduction or offset.  When the amount of damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against the infringer.  Any adverse consequences must rest on the alleged infringer when the inability to ascertain lost profits is due to the infringer's own failure to keep accurate records.

Authorities

Federal Circuit Bar Association Model Patent Jury Instructions, Instruction B.6.6 and B.6.1 (2008).

## REASONABLE ROYALTY - DEFINITION

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at the time when the infringing sales first began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. You must also assume that both parties believed the patent was valid and infringed.  In addition,

you must assume that patent holder and infringer were willing to enter into an agreement.  Your role is to determine what that agreement would have been.  The measure of damages is what royalty would have resulted from the hypothetical negotiation, and not simply what royalty either party would have preferred.

In this trial, you have heard evidence of things that happened after the date of the hypothetical negotiation.  That evidence can be considered only to the extent, if at all, that that evidence aids in you assessing what royalty would have resulted from a hypothetical negotiation taking place on the date of the hypothetical negotiation.  For example, although evidence of the actual profits Hewlett-Packard made may aid you in determining the anticipated profits at the time of the hypothetical negotiation, you may not limit or increase the royalty based on the actual profits Hewlett-Packard made.

In determining the reasonably royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1)    the rates paid by the licensee for the use of other patents comparable to the patent in suit;

(2)    the nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

(3)    whether the patent holder had an established policy of granting licenses or retaining the patented invention as its exclusive right, or whether the patent holder had a policy of granting licenses under special conditions designed to preserve his monopoly;

(4)    the nature of the commercial relationship between the patent holder and the licensee such as whether they were competitors or whether their relationship was that of an inventor and a promoter;

31

(5)     the effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales;

(6)     the duration of the patent and term of the license;

(7)     the established profitability of the product made under the patent; its commercial success; and its current popularity;

(8)     the utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

(9)     the nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention;

(10)    the extent to which the infringer has made use of the invention; and any evidence probative of the value of that use;

(11)    the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

(12)    the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(13)    any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  The final factor establishes the framework which you should use in determining a reasonable royalty, i.e., the payment that would have

resulted from a negotiation between a patent holder and the infringer taking place at the time when the infringement first began.

     <u>Authorities</u>

FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, Instruction B.6.7 (2008) (adapted).

33

**DAMAGES – ENTIRE MARKET VALUE RULE**

Cornell claims that it is entitled to damages based upon HP's sales of servers and workstations containing HP's accused microprocessors.  However, HP's servers and workstations contain components that Cornell does not allege infringe its '115 patent.

A royalty base generally includes only revenue generated by the allegedly infringing component.  Because Cornell seeks to include revenue generated by HP's sales of servers and workstations, rather than microprocessors, Cornell has the burden of establishing that it is entitled to obtain damages based upon unpatented components.

To meet its burden, Cornell must establish that: (1) Cornell sold completed computer systems or licensed the patent based on those completed computer systems; and (2) the alleged invention of the '115 patent is the basis of customer demand for HP servers and workstations. Cornell must also show that the invention of the '115 patent improved the performance of the HP servers and workstations and contributed substantially to the increased demand for those products.  In other words, Cornell must show by evidence that is reliable and tangible, and not conjectural or speculative, that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.

<u>Source:</u>

*Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co*., 225 U.S. 604, 615 (1912); *Imonex Svcs., Inc. v. W.H. Munzprufer Dietmar Trenner Gmbh*, 408 F.3d 1374, 1380 (Fed. Cir. 2005); *Bose Corp. v. GBL,* Inc, 274 F.3d 1354, 1361 (Fed. Cir. 2001); *Leesona Corp. v. United States*, 599 F.2d 958, 973 (Fed. Cir. 1979); *Site Microsurgical Sys., Inc. v. The Cooper Cos*., 797 F. Supp. 333, 340 (D. Del. 1992).

## PATENT EXHAUSTION/IMPLIED LICENSE

HP contends that, based upon the doctrines of patent exhaustion and implied license, Cornell is not entitled to damages based upon processors that IBM and Intel made for HP.  HP contends that IBM and Intel were licensed to the '115 patent by Cornell and thus permitted to make and sell those processors to HP.  Cornell does not dispute that Intel is licensed to the '115 patent.  However, Cornell disputes that IBM is licensed to the '115 patent.

If you find that IBM and Intel are licensed, you must determine whether IBM and Intel acted within the scope of their licenses in making or selling processors to HP.  A patentee cannot recover damages on allegedly infringing products when the purchaser obtained the product from an authorized—that is, licensed—source.  After an authorized first sale, a patentee no longer retains its patent rights with respect to the product sold.  The purchaser of the product may use or resell the product free of the patent.  This also applies to a sale of a patented product manufactured by a licensee acting within the scope of its license.

If you find that IBM and Intel were licensed and acted within the scope of their license in making or selling processors to HP, then you must find that Cornell is not entitled to damages based upon the microprocessors that IBM and Intel made or sold to HP.

Source:

*Adams v. Burke*, 84 U.S. 453 (1873); *Bloomer v. Millinger*, 68 U.S. 340, 350-51 (1863); *Cyrix Corp. v. Intel Corp.*, 846 F. Supp. 522, 539 (E.D. Tex. 1994) ("*Cyrix 1994*"); *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993).

**DELIBERATIONS**
**ELECTION OF FOREPERSON; DUTY TO DELIBERATE; COMMUNICATIONS**

**WITH COURT; CAUTIONARY; UNANIMOUS VERDICT; VERDICT FORM**

In conducting your deliberations and returning your verdict, there are certain rules you must follow.

First, when you go to the jury room, you must select one of your members as your foreperson.  That person will preside over your discussions and speak for you here in court.

Second, it is your duty, as jurors, to discuss this case with one another in the jury room. You should try to reach agreement if you can do so.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with your fellow jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or simply to reach a verdict.

Third, if you need to communicate with me during your deliberations, you may send a note to me through the marshal or bailiff, signed by one or more jurors.  I will respond as soon as possible either in writing or orally in open court.  Remember that you should not tell anyone - including me - how your votes stand numerically.

Fourth, your verdict must be based solely on the evidence and on the law which I have given to you in my instructions.  The verdict must be unanimous.  Nothing I have said or done is intended to suggest what your verdict should be - that is entirely for you to decide.

Finally, the verdict form is simply the written notice of the decision that you reach in this case.  You will take this form to the jury room, and when each of you has agreed on the verdict,

36

your foreperson will fill in the form, sign and date it, and advise the marshal or bailiff that you are ready to return to the courtroom.

<u>Authority</u>:

8th Circuit Civil Jury Instruction §1.05 (2007) (adapted).

5:01-CV-1974-NAM-DEP