Edward G. Poplawski
Bryan K. Anderson
Denise L. McKenzie
Sandra S. Fujiyama
Olivia M. Kim
**SIDLEY AUSTIN LLP**
555 West Fifth Street
Los Angeles, CA  90013-1010
Telephone:  (213) 896-6601
Facsimile:  (213) 896-6600

Attorneys for Plaintiffs/Counterdefendants
   Cornell University and Cornell Research
   Foundation, Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CORNELL UNIVERSITY, a non-profit New York corporation, and CORNELL RESEARCH FOUNDATION, INC., a non-profit New York corporation,<br><br>*Plaintiffs,*<br><br>v.<br><br>HEWLETT-PACKARD COMPANY, a Delaware corporation,<br><br>*Defendant.* | Civil Action No.: 5:01-CV-1974-RRR-DEP<br><br>**PLAINTIFFS' MEMORANDUM REGARDING THE ABSENCE OF A "SELL OR LICENSE" REQUIREMENT FOR APPLICATION OF THE ENTIRE MARKET VALUE RULE FOR REASONABLE ROYALTY DAMAGES** |
| HEWLETT-PACKARD COMPANY, a Delaware corporation,<br><br>*Counterclaimant,*<br><br>v.<br><br>CORNELL UNIVERSITY, a non-profit New York corporation, and CORNELL RESEARCH FOUNDATION, INC., a non-profit New York corporation,<br><br>*Counterdefendants.* | Judge: Hon. Randall R. Rader<br>Trial: May 19, 2008 |

I.   **Recovery For Lost Profits And Reasonable Royalty Have Different Foundation – Applying Requirements From One To The Other Can Lead To Erroneous Results.**

HP's proffered "buy or sell" standard for the entire market value rule is not the law, as recognized by decisions in this very case. HP simply cannot shoehorn lost profits case law into this reasonable royalty case. A lost profits analysis is focused on the patent owner and market and requires a specific inquiry directed to determine whether but for the infringement the patent owner would have made the sales.[1] It considers the patent owner's manufacturing capability, demand for the product, and acceptable non-infringing alternatives.[2] The reasonable royalty analysis, in contrast, is focused on the infringer and specifically the infringer's *use of the invention*.[3] This difference in focus results in overlapping but separate criteria for recovering lost profits versus a reasonable royalty. Attempting to apply the distinct criteria from lost profits to a reasonable royalty analysis, and especially rules focused on the very underpinnings of the different theories of recovery, as HP does with its new sell or license requirement, can lead to erroneous results.

II.  **Cornell Need Not Sell Or License CPU Modules (Or Anything) To Recover Reasonable Royalty Based Upon CPU Modules.**

   A.   **HP's Sell Or License Requirement Was Rejected By The Courts.**

- *Trans-World Mfg. Corp. Al Numan & Sons, Inc.*, 750 F.2d 1552 (Fed. Cir. 1984): Trans-World designed, manufactured, and sold patented point of purchase ("POP") display racks. Al Numan purchased infringing POP display racks from a third party and provided them free of charge to discount stores to use as displays to sell Al Numan's nonprescription eyewear. Trans-World sued and sought a reasonable royalty based upon Al Numan's profits from selling eyewear – Al Numan's actual use of the invention. Notably, Trans-World did not make, sell or license eyewear and Al Numan did not make, sell or license POP display racks. The Federal Circuit disagreed with the district court's exclusion of Al Numan's profit on the eyewear from the royalty base, stating: "We disagree with the district court's exclusion of evidence of Al Numan's profits from selling eyewear as not relevant to the determination of a reasonable royalty."[4]

- *TWM Mfg. Co., Inc. v. Dura Corp.*, 789 F.2d 895 (Fed. Cir. 1986): TWM's patented device enabled trucks to engage an additional axle and wheels to carry heavy loads. The Court included unpatented wheels and axles in the royalty base even though "TWM did not manufacture the unpatented parts, but merely provided them as 'convenience to its customers,'" stating: "We reject Dura's argument that the inclusion of the unpatented items in the royalty base or lost profits determination is dependent upon who manufactures those items, or on whether they are supplied

---

[1] *See Poly-America LP v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004).
[2] *See generally Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1166 (6th Cir. 1978).
[3] The patentee is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty *for the use of the invention made by the infringer*…" 35 U.S.C. §284.
[4] The Court did not use the term EMVR in its analysis but focused instead on the infringer's use.

1

for 'convenience.'" The Federal Circuit then recited the standard EMVR factors and looked directly to the infringer's use of the invention as determinative, stating: "Where a hypothetical licensee would have anticipated an increase in sales of collateral unpatented items because of the patented device, the patentee should be compensated accordingly."

- *Maxwell v. Baker,* 86 F.3d 1098 (Fed. Cir. 1988): Maxwell, a Target employee, invented a novel and inexpensive tie to join a pair of shoes. Since there was no evidence that Maxwell manufactured anything (shoes or ties) she could only recover a reasonable royalty. The Court awarded a royalty based upon shoes under the EMVR using the standard two factors: single functional unit and customer demand.

- *Tec Air, Inc. v. Nippondenso Mfg. USA, Inc*., 1996 WL 556739 (N.D. Ill., Sept. 27, 1996); upheld by the Federal Circuit at 192 F.3d 1353 (Fed. Cir. 1999): Tec Air patented a mold and a method for producing dynamically balanced fans. Nippondenso sold large assemblies that included patented fans with a large radiator and condenser unit. The Court, in awarding Tec Air a reasonable royalty, rejected Nippondenso's argument, similar to HP's argument here and also based upon *Additive Controls*, that Tec Air was not entitled to reasonable royalties based upon Nippondenso's assemblies because Tec Air did not sell assemblies. The Court cited *TWM* in rejecting the proposition that "inclusion of unpatented items in the royalty base or lost profits determination is dependent upon who manufactures those items." The Federal Circuit upheld the award of a reasonable royalty based upon the EMVR and recited the factors of customer demand and single functional unit.

- *King Instruments Corp. v. Perego*, 65 F.3d 941 (Fed. Cir. 1995) (J. Rader): King's patents covered loading magnetic audio or video tape into cassettes. The Federal Circuit upheld the award of lost profits and reasonable royalty damages "notwithstanding King's election to refrain form making or selling the invention," stating: "The [Patent] Act does not dictate that a patentee must manufacture its own invention to recover the costs of innovation."[5]

- *Medical Instr. v. Eleckta*, CV-97-2271-RHW, 2002 U.S. Dist. LEXIS 26812 (Sept. 4, 2002): The Court rejected the exact same sell or license argument made by HP here, stating:[6]

  Elekta also argues that the instruction should have included a requirement that the Entire Market Value Rule cannot be applied unless Midco can show that it sells the unpatented products…[7] [T]his requirement is not necessary to apply the Entire Market Value Rule to a reasonable royalty award. In fact, the rationale behind reasonable royalty damages is to afford the patent holder some compensation when lost profits cannot be claimed or proved (e.g., when the patent holder does not sell the patented product). *See Fromson v. Western Litho Plate & Supply Co*., 853 F.2d 1568, 1574 (Fed. Cir. 1988).

---

[5] *King Instruments* at 947 and 950-51. Judge Rader also provided substantial economic reasons why a patentee (reasons especially applicable to a University such as Cornell) should not produce the patented product: "The market may well dictate that the best use of a patent is to exclude infringing products. A patentee, perhaps burdened with costs of development, may not produce the patented invention as efficiently as the infringer." *Id*. at 950.

[6] At 22-23. The Federal Circuit revised on infringement but did not discuss damages. *See Medical Instrumentation v. Eleckta*, 344 F.3d 1205 (Fed. Cir. 2003).

[7] The Medical Instrumentation Court rejected this argument based upon many of the same cases cited by HP here. *See Medical Instrumentation v. Eleckta*, CV-97-2271-RHW, 2002 U.S. Dist. Ct. Motions 2271, May 20, 2002.

**B.   HP's Sell Or License Requirement Is Only Applicable To Old Lost Profits Cases.**

HP's proposed sell or license requirement is based upon misinterpreting the lost profit analysis in old lost profits cases and attempting to extend that analysis to a reasonable royalty. Under HP's early lost profit cases, a patentee could only recover lost profits if it sold the infringing item, in addition to other requirements.[8]  Indeed, HP's sell or license requirement is no longer good law even for lost profit cases.[9]

HP's citation to *Paper Converting,* a lost profits case, supports Cornell, not HP.  *Paper Converting* stated that the EMVR "may apply only where 'normally the patentee (or its licensee) can anticipate sale of such unpatented components as well as of patented ones.'"[10]  The Federal Circuit in *TWM* makes clear that the phrase "or its licensee" refers to the hypothetical licensee (the infringer, here HP) in a damage analysis.  Thus, since here HP can anticipate the sale of CPU modules the application of the EMVR to include CPU modules is appropriate.

HP compounds its misinterpretation of the *Paper Converting* lost profits analysis by asserting that it applies to a reasonably royalty analysis by mistakenly asserting that *Livesay*, a case cited by *Paper Converting*, is a reasonable royalty case.[11]  HP then builds on this faulty foundation by citing to lost profits cases such as *Del Mar Avonics*.[12]

**C.   HP's District Court Cases Are Easily Distinguishable As Not Followed, Rejected By Later Cases, And Properly Decided As Not Satisfying The Two Proper EMVR Factors.**

- *Additive Control & Measurement Sys. Inc. v. Flowdata, Inc.*, 29 U.S.P.Q.2d 1890 (S.D.

---

[8] *See Panduit Corp.* at 1156 (recovering lost profits requires the showing existence of demand for patented product among other factors.)

[9] *See King Instrument* at 947 (Fed. Cir. 1995) ("This court held in *Rite-Hite*…that a patent owner who has suffered lost profits is entitled to lost profit damages regardless of whether the patent owner has made, used, or sold the patented device.").

[10] 789 F.2d at 901 ("In establishing lost profits, [t]he deciding factor…is whether 'normally the patentee (or its licensee) can anticipate sale of such unpatented components as well as of the patented ones.'")

[11] HP made this erroneous assertion in its Summary Judgment Motion, Dkt. No. 705, at 14: "Notably, in Paper Converting, the Federal Circuit cited a reasonable royalty case, *Livesay*...."  *Livesay* is a lost profits case and not a reasonable royalty case. The *Livesay* Court specifically held that the award was lost profits, conducted a detailed lost profits inquiry, awarded lost profits, and specifically rejected a lesser award based upon a reasonable royalty.  Further, Federal Circuit specifically recognized *Livesay* as a lost profits case, not a reasonable royalty case.  *Rite-Hite v. Kelly*, 56 F.3d 1538, 1567 (Fed. Cir. 1995); *Hughes Tool Co. V. G. W. Murphy, Inc.*, 491 F.2d 923, 929 (Fed. Cir. 1973).

[12] *Del Mar Avoinics, Inc. v. Quinton Instr. Co.*, 836 F.2d 1320 (Fed. Cir. 1987).

Tex. 1993)</u>: This district court case was rejected by *Tec-Air* and with no positive following, is easily distinguishable as lacking the two proper EMVR factors of customer demand and single functioning unit. *Additive Controls* denied recovery under the EMVR for "ancillary or collateral equipment such as the…injectors" for flowmeters describing it as "convoyed sales." Although the *Additive Controls* language was loose, the Court came to the correct result since the injectors were sold separately from the patented product and did not satisfy the single functioning unit prong of the test. Indeed, *Tec-Air* specifically cited *Additive Controls* and rejected the argument that it required that the patentee must sell the patented device to recover a reasonable royalty on the EMVR.[13]

- <u>*Baldwin Tech. Corp. v. Dahlgren Intl., Inc.*, 819 F. Supp. 568 (N.D. Tex. 1992)</u>: This is another district court case with no positive following, also correctly rejected an EMVR recovery on separate spare parts and services since it failed the single functioning unit prong of the test.

- <u>*H.B. Fuller Co. v. National Starch and Chemical Co.*, 689 F. Supp. 923 (D. Minn. 1988)</u>: This is also easily distinguishable. National's patent covered adhesive used in making diapers. H.B. Fuller infringed by selling adhesive to Weyerhaeuser which Weyerhaeuser used in manufacturing diapers. H.B. Fuller attempted to collect a reasonable royalty on Weyerhaeuser's diapers from National even though neither H.B. Fuller <u>or</u> National made or sold diapers. Since National's (the infringer's) ***use*** did not include selling diapers, the Court properly denied recovery on a royalty base of diapers.

### D. HP's Reliance On §1498 Cases Is Misplaced And All Are Easily Distinguishable Because None Satisfy The Two Proper EMVR Factors.

HP's citations to *Hughes Aircraft*, *Decca*, and *Standard Mfg*.[14] are all distinguishable as §1498 cases and on their failure to satisfy the EMVR requirements of customer demand and single functioning unit. Although the recovery under §1498 is a reasonable royalty, unlike in a commercial setting, the focus in §1498 is on the patentee's loss, not the government's gain. "The proper measure [of damages] in eminent domain is what the owner has lost, not what the taker has gained." *Standard Mfg*. at 759. Thus, unlike recovery under §284 where the focus is on the infringer's use, in applying the EMVR under §1498 the focus is on the patent owner's loss, not use. Thus, HP's citations to the EMVR for §1498 cases are inapposite in the commercial setting such as the present dispute between Cornell and HP.[15]

---

[13] *Tec Air, Inc. v. Nippondenso Mfg. USA, Inc*., 1996 WL 556739, at *6 (N.D. Ill., Sept. 27, 1996); upheld by the Federal Circuit at 192 F.3d 1353 (Fed. Cir. 1999).

[14] *Hughes Aircraft Co. v. U.S*., 31 Fed. Cl. 464 (Fed. Cl. 1994), *Decca Ltd. v. U.S*., 225 Ct. Cl. 326 (Ct. Cl. 1980), *Standard Mfg. v. U.S*., 42 Fed. Cl. 748 (Fed. Cl. 1999).

[15] For example, Hughes Aircraft was denied recovery for separate non-infringing satellites since they did not satisfy the single functioning unit prong. *Hughes Aircraft* at 468 stated that EMVR "finds its typical application in the commercial context." Standard Mfg. was denied recovery of Value Engineering Change Payments (VECP), extra payments that the government made to the supplier of the infringing trailers, under the EMVR because VECP are not physically part of the trailers—failing the single functioning unit

4

E.  **This Court Rejected HP's Sell Or License Requirement.**

The Court flatly rejected HP's sell or license argument, stating: "Simply stated, while HP urges recognition of a condition that the patentee must practice the patent in suit as a predicate for recovering damages under the entire market value rule in a reasonable royalty setting, this contention finds no support in Federal Circuit jurisprudence" (Dkt. 787, at p. 173.); and "there are no cases requiring a threshold showing that the patentee has licensed the patent in such a way as to include the relevant products in order to benefit from the rule."  (Dkt. 787, at 171-73.)[16]

F.  **Neither Model Or Actual Jury Instructions Include A Sell Or License Requirement.**

The 2004 [Proposed] Uniform Delaware Patent Jury Instructions and recent District Courts provide EMVR jury instructions with the only two proper factors and without a sell or license requirement.[17]

III. **Creating A Sell Or License Requirement Would Severely Disadvantage Universities To The Great Profit Of Large Manufacturing Corporations.**

HP's novel sell or license requirement is designed to handicap all Universities to the profit of all large corporations.  The patent laws are designed to foster innovation, not use and not infringing use by "well-funded, well-lawyered, large manufacturing corporations" at the expense of those "lack[ing]…manufacturing capability."[18]

---

prong.  *Standard Mfg*. at 760.  Decca Ltd., the owner of a patented three frequency radio navigation system, was denied recovery for "land, buildings, roads, and other items" under the EMVR theory because its patented navigation system did not create the demand for those items.  *Decca Ltd*. at 1175.

[16] Relevant pages of the Court's Decision are attached as **Exhibit A**.

[17] The 2004 [Proposed] Uniform Delaware Patent Jury Instructions are attached as **Exhibit B**.  *Lucent Technologies, Inc. et al. v. Microsoft, et al.,* 07-CV-2000 H (CAB), Apr. 4, 2008, S.D. Cal.; *Fresenius Medical Care Holdings, Inc., Et Al., V. Baxter International, Inc., et al.,* No. C 03-1431 SBA, Oct. 10, 2007, N.D. Cal.; *Lucent Technologies, Inc. et al. v. Gateway, Inc. et al.,* 02CV2060-B (CAB) consolidated with 03CV0699-B (CAB) and 03CV1108-B (CAB), Feb. 14, 2007, S.D. Cal.; *Tec-Air, Inc. V. Denso Mfg. Michigan, Inc*., 192 F.3d 1352 (Fed. Cir. 1999); Instruction from District Court *Case* No. 91-C-4488 (N.D. IL., Jun. 19, 1997), are attached as **Exhibits C – F**.  Counsel for Cornell was unable to locate any EMVR jury instruction that included either a sell or license requirement.

[18] *Fromson v. Western Litho Plate and Supply Co*., 853 F.2d 1568, 1575 (Fed. Cir. 1988).

Respectfully Submitted,

DATED:  May 27, 2008       By:   *s/ Olivia M. Kim*
                                                Edward G. Poplawski
                                                Bryan K. Anderson
                                                Denise L. McKenzie
                                                Sandra S. Fujiyama
                                                Olivia M. Kim

**SIDLEY AUSTIN LLP**
555 West Fifth Street
Los Angeles, CA  90013-1010
Telephone:  (213) 896-6601
Facsimile:  (213) 896-6600

James J. Mingle
Nelson Roth
Valerie Cross
OFFICE OF UNIVERSITY COUNSEL
Cornell University
300 CCC Building, Garden Avenue
Ithaca, NY 14853-2601
Telephone:  (607) 255-5124

Attorneys for Plaintiffs Cornell University and
   Cornell Research Foundation, Inc.

6

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of May, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF system which will send notification to the following counsel for HP:

John Allcock    john.allcock@dlapiper.com, lwatts@graycary.com

Stewart M. Brown    Stewart.Brown@dlapiper.com

Jerauld E. Brydges    jbrydges@hselaw.com, hculbertson@hselaw.com, jallison@hselaw.com, litigation@hselaw.com

Sean C. Cunningham    sean.cunningham@dlapiper.com, sally.jones@dlapiper.com

Erin P. Penning    erin.penning@dlapiper.com, judith.frank@dlapiper.com

Barry K. Shelton    shelton@fr.com, pickett@fr.com, tipton@fr.com, zamen@fr.com

Licia E. Vaughn    licia.vaughn@dlapiper.com

Arthur A. Wellman    arthur.wellman@dlapiper.com


Executed on May 27, 2008, at Los Angeles, California.

*s/ Olivia M. Kim*
Olivia M. Kim

1