UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

**CORNELL UNIVERSITY**, a nonprofit New York corporation, and **CORNELL RESEARCH FOUNDATION, INC.**, a nonprofit New York corporation,

                              **Plaintiffs,**

      -v-                                                   01-CV-1974

**HEWLETT-PACKARD COMPANY**, a Delaware corporation,

                              **Defendant.**

---

**HEWLETT-PACKARD COMPANY**, a Delaware corporation,

                              **Counterclaimant,**

      -v-

**CORNELL UNIVERSITY**, a nonprofit New York corporation, and **CORNELL RESEARCH FOUNDATION, INC.**, a nonprofit New York corporation,

                              **Counterdefendants.**

---

APPEARANCES:

Sidley Austin Brown & Wood
Bryan K. Anderson, Esq., of Counsel
David T. Miyamoto, Esq., of Counsel
Denise L. McKenzie, Esq., of Counsel
Edward G. Poplawski, Esq., of Counsel
Olivia M. Kim, Esq., of Counsel
Sandra S. Fujiyama, Esq., of Counsel
555 W. Fifth Street, 40th Floor
Los Angeles, California 90013

and
Cornell University, Office of Counsel
James J. Mingle, Esq., of Counsel
Nelson E. Roth, Esq., of Counsel
Valerie L. Cross, Esq., of Counsel
300 CCC Building, Garden Avenue
Ithaca, New York 14853
Attorneys for Plaintiffs/Counterdefendants

DLA Piper, Rudnick, Gray Cary US LLP
Erin P. Penning, Esq., of Counsel
John Allcock, Esq., of Counsel
Sean C. Cunningham, Esq., of Counsel
Arthur A. Wellman, Esq., of Counsel
Licia E. Vaughn, Esq., of Counsel
Stewart M. Brown, Esq., of Counsel
401 B Street, Suite 1700
San Diego, California 92101-4297
and
Harter, Secrest & Emery LP
Jerauld E. Brydges, Esq.
1600 Bausch and Lomb Plaza
Rochester, New York 14604-2711
and
Fish, Richardson Law Firm
Barry K. Shelton, Esq., of Counsel
111 Congress Avenue
Suite 810
Austin, Texas 78701
Attorneys for Defendant/Counterclaimant

**Hon. Randall R. Rader, Circuit Judge, United States Court of Appeals for the Federal Circuit, sitting by designation:**

### ORDER

Presently before the court is Defendant Hewlett-Packard Company's ("Hewlett-Packard's") motion to exclude the expert testimony of Dr. Marion Stewart, Plaintiffs Cornell University and Cornell Research Foundation, Inc.'s ("Cornell's") expert on reasonable royalty damages. After conducting voir dire of Dr. Stewart and entertaining argument on the motion, the court granted Hewlett-Packard's motion in part.

The district courts have long served as gatekeepers tasked with inquiry into both the relevance and reliability of expert testimony. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993); Kumho Tire Co., Ltd. V. Carmichael, 526 U.S. 137, 151 (1999). In performing this function, the trial courts must only admit as evidence testimony that is (1) based upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) delivered by a witness who has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. Testimony failing to meet these criteria must be excluded.

District courts have broad discretion in determining both how to assess reliability and whether reliability exists. Kumho Tire, 526 U.S. at 151. This discretion gives the trial court the responsibility to review the soundness of the methodologies relied upon by the expert, not the conclusions reached. U.S. v. Bonds, 12 F.3d 540, 563 (6th Cir. 1993). Determination of the correctness of an expert's conclusions is the province of the jury, not the judge. See 4-702 Jack B. Weinstein and M. Berger, Weinstein's Federal Evidence § 702.05.

In a suit for patent infringement, a successful plaintiff is entitled to damages "adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interests and costs as fixed by the court." 35 U.S.C. § 284 (2006). This statute authorizes two categories of damages in patent cases: lost profits and reasonable royalty damages. Because Cornell does not manufacture or sell products incorporating the patented device, it has not sought and is not entitled to lost profits.

Characterized as the "floor below which damage awards may not fall," reasonable royalty damages are ubiquitous in modern patent cases. Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1544 (Fed.Cir.1995). A reasonable royalty contemplates a hypothetical negotiation between the patentee and the infringer at a time before the infringement began. Hanson v. Alpine Valley Ski Area, Inc., 718 F.2d 1075, 1078 (Fed. Cir. 1983). Critically, the hypothetical negotiation presumes that the patentee is a willing licensor and the infringer a willing licensee. Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

Two factors are central to the reasonable royalty calculation—the royalty base (the product sales which would be subject to the reasonable royalty), and the royalty rate. Once these amounts have been set, calculation of the reasonable royalty is a straightforward multiplication exercise.

Even though consideration of the hypothetical is an essential aspect of computing reasonable royalty damages, the Federal Circuit "requires sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture" in all damages calculations. Grain Processing Corp. v. American Maize-Products Co., 185 F.3d 1341, 1350 (Fed. Cir. 1999). The requirement for "some approximation" in the reasonable royalty context does not negate the Federal Circuit's requirement of "sound economic and factual predicates" for that analysis. Riles v. Shell Exploration & Production Co., 298 F.3d 1302, 1311 (Fed. Cir. 2002) (citing Crystal Semiconductor, 246 F.3d 1336; Shockley v. Arcan, Inc., 248 F.3d 1349, 58 USPQ2d 1692 (Fed.Cir.2001)). Where, as here, such sound economic and factual predicates are absent from a reasonable royalty analysis, a district court must exercise its discretion to exclude the proffered testimony.

In identifying the royalty base in this case, Dr. Stewart invoked the "entire market value rule." When it applies, the entire market value rule allows a patentee to collect damages on (*i.e.*, include in the royalty base) the unpatented components sold with the patented invention—the entire market value of the accused product—rather than simply the portion of sales due to the patented component. Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1549 (Fed. Cir. 1995).

The Federal Circuit has limited application of this rule to instances where "the patent-related feature is the 'basis for customer demand'" for an accused product that nevertheless contains other features. Id. Accordingly, expert testimony offering the entire market value of accused products as the royalty base is only appropriate when it has been demonstrated, by a preponderance of the evidence, that the patented invention was the "basis for demand" of those products.

3

This court admonished the parties that expert testimony on the topic of damages would not be allowed absent a firm basis in accepted economic principles during its May 6, 2008 Pretrial Conference. Nevertheless, Cornell now seeks to admit Dr. Stewart's testimony that the entire market value of Hewlett-Packard's servers and workstations is the appropriate royalty base to sue in calculating a reasonable royalty. Dr. Stewart's methodology however does not show a sound economic connection between this broad proffered royalty base and the claimed invention.

Despite the court's repeated exhortations to supply economic proof linking any proposed entire market value royalty base to the market and consumer demand, Dr. Stewart simply could not identify any reliable evidence in support of his position. Likewise, Dr. Stewart could not apportion value or demand between the claimed invention—a component of a component within the processors used in Hewlett-Packard's servers and workstations—and the accused products.

It is uncontroverted that if the claimed invention is present in the accused products it is but one component of the instruction reorder buffer ("IRB"), itself a component of Hewlett-Packard's PA-8000 family of processors. Those PA-8000 processors, in turn, are but one aspect of the massive and complex servers and workstations that Dr. Stewart and Cornell seek to include in the royalty base. Even a cursory glance at Hewlett-Packard's ordering guides reveals that the accused processors are only one component of the Hewlett-Packard systems. See, e.g., Ex. D-240. In fact, these ordering "menus" provide price breakdowns for individual "processor modules" independent of the server systems they may be incorporated with. Id.

Moreover, neither Cornell nor Dr. Stewart has offered sufficient economic proof that the component of a component of a part of the server and workstation systems drove demand for the entire server and workstation products and entitles Cornell to damages on sales of Hewlett-Packard's entire servers and workstations. At best, the record shows that purchasers opt for Hewlett-Packard products because of their superior performance. Yet the patented invention is still merely one of several—what Dr. Stewart calls a "handful of components"—in the Hewlett-Packard processor "Performance Formula." Expert Rpt. of Marion Stewart at 24-25. Even if

4

Cornell could prove that the claimed invention was the heart and soul of the PA-8000's "intelligent execution" feature, that feature is merely one of several features that enhanced performance of those processors. Id. at 26. Moreover, Dr. Stewart recognizes in his expert report that the out-of-order execution capability claimed in the '115 patent is only "one of the listed 'critical elements'" of the PA-8000's "intelligent execution" feature. Id. at 32. That the patented invention comprises one element of the processors that are just one part of Hewlett-Packard's server and workstation systems is not sufficient to support application of the entire market value rule.

Stated simply, Dr. Stewart made no effort to account for the need to link the entire performance or entire market value to the patented invention. Cornell claims that the shortcomings in Dr. Stewart's analysis are not the result of his failings, but Hewlett-Packard's. In particular, Cornell complains that Hewlett-Packard's discovery misconduct prevented Cornell (and by extension Dr. Stewart) from obtaining information about Hewlett-Packard's customers and the demand for its PA-8000 family of processors. Cornell's assertion that "generic" surveys and market information would not have helped it to understand the market demand for severs and workstations containing processors incorporating the claimed invention highlights the flaws in this argument. Cornell could have and should have offered evidence as to the server and workstation market. That Hewlett-Packard's customers may have been in the market for "Ferraris" rather than "generic" automobiles is of no moment—Cornell could have offered marketplace-wide evidence of demand sensitivities for both the price sensitive and performance sensitive server and workstation markets. Indeed, Dr. Stewart identified several competitor products in the "high-end" server and workstation market; he could have analyzed demand for those products at a minimum to give a picture of demand for the patented component. Id. at 10. That some of these products used out-of-order execution just like Hewlett-Packard's products, and others did not underscores the relevance of such analysis. The fact remains, however, that

5

Cornell did not offer a single demand curve or attempt in any way to link consumer demand for servers and workstations to the claimed invention.

Cornell attempts to excuse its failure of proof by reference to a September 2005 discovery order. Dkt. 446. Specifically, Cornell refers the court to two commands from that order:

> 1) Defendant shall be precluded from maintaining, either on motion or at trial, that any evidence introduced by plaintiffs concerning customer demand/customer preference is deficient or defective because of lack of testimony or other information from customers.
>
> 2) It is established that, at least as of 1996, HP's customers for servers and workstations had received HP's press releases of March 6, 1995 (HP 049580-049583), November 2, 1995 (HP 049588-049591) and April 3, 1996 (HP 041234-041235). Those press releases were intended to convey to HP's customers that the "Intelligent Execution" feature discussed in them was at least one of the reasons why they should buy HP servers and workstations containing PA-8000 family processors.

Id. at 10. Cornell's excuse is inapposite. The court is not excluding Dr. Stewart's testimony that the whole market value of Hewlett-Packard's servers and workstations should be used as the royalty base because of a paucity of evidence from Hewlett-Packard's customers. The court is excluding this testimony because Dr. Stewart and Cornell have not drawn any connection between the market for servers and workstations and the patented invention. As Judge Peebles made clear in his summary judgment recommendation on this issue, "these preclusion orders do not ultimately relieve the plaintiffs of their burden of proving, at trial, that the patented technology contributed substantially to increased customer demand for HP servers and workstations in order to qualify for the benefits of the entire market value rule." Cornell Research Found., Inc. v. Hewlett-Packard Co., No. 5:01-CV-1974, 2007 WL 4349135 at *66 (N.D.N.Y. Jan. 31, 2007).

Dr. Stewart's inability to link his opinion to the realities of this case is a prime example of "the hypothetical [] lapsing into pure speculation," that Federal Circuit law prohibits. Grain Processing, 185 F.3d at 1350. Accordingly, this court must exclude Dr. Stewart's testimony that

6

the entire market value of Hewlett-Packard's servers and workstations should be used as the royalty base is excluded.

IT IS SO ORDERED.

May 27, 2008
Syracuse, NY

*Randall R. Rader*
Randall R. Rader
Circuit Judge